## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Commonwealth of Virginia

 v.

Karl Michael Roush

March 31, 1997

Case No. CR96-26

By Judge William H. Ledbetter, Jr.

In pretrial motions, the defendant (Roush) requests that the court appoint experts, at public expense, to assist his attorneys with issues surrounding the forensic applications of DNA technology and to help him challenge the DNA evidence that the Commonwealth may use against him. Further, Roush requests the appointment of a "hair and fibers" forensic expert to help him challenge forensic evidence that the Commonwealth intends to use. The motions were argued on March 25, 1997, and taken under advisement. For the reasons explained below, the motions will be denied.

### Background

Sixteen-year-old Sofia M. Silva disappeared from her home in Spotsylvania County on September 9, 1996. Because foul play was suspected, her disappearance triggered widespread publicity, including a feature on a nationally-syndicated television program.

Several weeks later, Silva's decomposed body was found in a creek in neighboring King George County, wrapped in a blanket and tied with rope. More extensive publicity ensued.

On January 21, 1997, a Spotsylvania County grand jury indicted Roush for the abduction and murder of Silva. At the time, Roush was in custody on an unrelated felony charge. He was immediately arrested on these charges.

After the court determined that Roush was indigent and appointed counsel to represent him, hearings were held on several pretrial motions. On January 28, 1997, with the concurrence of the Commonwealth, the court appointed expert criminal investigators to assist in Roush's defense at public expense. The court made that appointment in large part because the Commonwealth already had made known that the case against Roush would include significant testimony of forensic experts related to the analyses of hair and fibers found on the victim and similar material in Roush's vehicle and apartment.

On February 18, 1997, the Commonwealth nol-prossed the murder indictment, conceding that it did not have sufficient evidence to prove that the homicide occurred in Spotsylvania County. The Commonwealth announced that it would proceed with the abduction indictment in Spotsylvania County and seek a new murder indictment in King George County, where the body was found.

More pretrial motions were filed and heard, including the defense motions now under consideration.

### DNA Expert

At the March 25th hearing, Roush's attorneys elaborated upon their motion for appointment of a DNA expert. Pointing out that they have no special expertise in DNA technology, they argued that a DNA expert was needed to assist counsel in understanding the Commonwealth's DNA laboratory report and the testimony that the Commonwealth's DNA expert may give at trial. They argued further for the services of an independent DNA testing lab to examine and analyze the same material tested for the Commonwealth by the Division of Forensic Science. At one point, counsel suggested that court approval of $1,000.00 would provide the defense with the necessary DNA expert assistance but that the specifics of such assistance should be divulged to the court only in an *ex parte* proceeding.

The Commonwealth opposed the motion, noting that the court already had appointed expert criminal investigators for the defense. The Commonwealth also observed that defense counsel had not sought a consultation with or deposition of the Commonwealth's DNA expert. The Commonwealth's Attorney represented that the expert would fully explain to counsel and the defense's criminal investigators the forensic applications of DNA technology, generally as well as specifically related to this case, and would clarify esoteric

language in the report heretofore made available to the defense pursuant to Virginia Code § 19.2-270.5. As for Roush's request for a separate and independent DNA testing, the Commonwealth argued that Roush has shown no particularized need. Finally, the Commonwealth opposed any *ex parte* proceeding wherein defense counsel would explain its proposal regarding the use of a DNA expert.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that an indigent defendant has a constitutional right to a mental evaluation and psychiatric assistance, at public expense, when his sanity is seriously in question and he can show that such assistance is necessary to prepare an effective defense.

In the same term, the Supreme Court also decided a case involving appointment of a non-psychiatric expert. In *Caldwell v. Mississippi*, 472 U.S. 320 (1985), the trial court's denial of appointment of a criminal investigator, a fingerprint expert, and a ballistics expert was upheld. Because the defendant's request was based on "little more than undeveloped assertions that the requested assistance would be beneficial," the Court said it saw no need to determine in that case "what if any showing would have entitled a defendant to assistance of the type here sought."

Since 1985, many courts have considered the question of appointment of non-psychiatric experts to assist indigent defendants. Most of the appellate court decisions hold that the appointment of non-psychiatric experts depends upon whether the defendant can make a particularized showing of need for such expert assistance.

The Supreme Court of Virginia considered the issue in *Husske v. Commonwealth*, 252 Va. 203 (1996). There, the trial court had denied the defendant's request for appointment of a DNA expert. Our Supreme Court stated:

> We are of the opinion that *Ake* and *Caldwell*, when read together, require that the Commonwealth of Virginia, upon request, provide indigent defendants with "the basic tools of an adequate defense …" and that in certain instances these basic tools may include the appointment of non-psychiatric experts. This Due Process requirement, however, does not confer a right upon an indigent defendant to receive, at the Commonwealth's expense, all assistance that a non-indigent defendant may purchase … .
>
> Moreover, an indigent defendant's constitutional right to the appointment of an expert, at the Commonwealth's expense, is not absolute. We hold that an indigent defendant who seeks appointment

of an expert witness, at the Commonwealth's expense, must demonstrate that the subject which necessitates the assistance of the expert is likely to be a significant factor in this defense ... and that he will be prejudiced by the lack of expert assistance ... . An indigent defendant may satisfy this burden by demonstrating that the services of an expert would materially assist him in the preparation of his defense and that the denial of such services would result in a fundamentally unfair trial.

The Court, in *Husske*, went on to say that "mere hope or suspicion that favorable evidence is available is not enough to require that such help be provided ... . The determination ... whether a defendant has made an adequate showing of particularized necessity lies within the discretion of the trial judge."

The Court then quoted with approval a passage from a decision of the U.S. Court of Appeals for the 11th Circuit:

Requiring trial courts ... to provide expert assistance ... would place a substantial, if not onerous, burden on the administration of criminal justice. For example, the trial court would have to (1) appoint a defense expert for every expert available to the government; (2) provide for expert assistance whether or not such assistance turned out to be needed; and (3) provide for any additional experts the appointed experts might need to explore theories that could aid the defense in cross-examining prosecution witnesses or in presenting the defense's case. We question the wisdom of such due process requirements absent a substantial showing, such as the one made in *Ake*, of a significant benefit to the truth-seeking function of a trial. *Moore v. Kemp*, 809 F.2d 703 (11th Cir. 1987), *cert. denied*, 481 U.S. 1054 (1987).

Applying these principles to this case, it is obvious that Roush has demonstrated no particularized need for an independent DNA expert.

The Commonwealth has represented that it will make its own expert(s) available to defense counsel and their criminal investigators to familiarize them with issues surrounding the forensic application of DNA technology, to explain the testing procedures used in this instance, and to decipher the scientific jargon in the report. If this procedure is carried out in a proper manner, it is difficult to imagine, based on the arguments made thus far, why Roush would need his own DNA expert to do the same thing.

As for the second use to which Roush proposes to put a DNA expert, to conduct independent lab testing of the material, there is absolutely no showing why this should be allowed. As in *Caldwell*, this "hope" that favorable evidence may be discovered or that the Commonwealth's scientific evidence may be discredited "is not enough to require that such help be provided." There is no suggestion that the Commonwealth's evidence may be tainted, that the Division of Forensic Science used improper methodology, or that the conclusions reached by the Commonwealth's DNA expert are or may be flawed. In fact, as was conceded at the March 25th hearing, the results of the Commonwealth's DNA analysis are more exculpatory than incriminating. Of all the items submitted for analysis, a DNA profile was detected only on vaginal swabs. According to the report, that profile "is consistent with a mixture of the DNA profile of [the victim] and at least one co-contributor. If there is only one other contributor, then [Roush] is eliminated as a co-contributor ... . If there is more than one other contributor, then [Roush] cannot be eliminated as a possible co-contributor of the genetic material detected."

Roush is not constitutionally entitled to a DNA expert just because the Commonwealth has a DNA expert, and he is not entitled to have the material independently tested by a laboratory of his own choosing simply as a matter of course and without a showing of particularized need.

### Hair and Fiber Forensics Expert

The same principles that apply to Roush's request for appointment of a DNA expert apply to his request for an expert to assist with analysis and evaluation of the hair and fiber evidence.

Although the forensic report of the hair and fiber testing appears to be more of a "significant factor" in the case than the DNA testing results, it does not follow that Roush is constitutionally entitled to an independent analysis of the Commonwealth's hair and fiber evidence as a matter of course and without any particularized showing of need. Nor does it follow that Roush is entitled to a forensic expert just because the Commonwealth has a forensic expert. There has been no suggestion that this evidence may be tainted or that improper methodology was utilized or that the conclusions reached by the Commonwealth's forensic expert are or may be flawed.

As for the request for assistance in understanding the forensic evidence, the Commonwealth's representation that it will make its expert(s) available for such purpose is an acceptable resolution, at least on the showing thus far made by Roush.

*Conclusion*

Roush's motions for the appointment of a DNA expert and a hair and fiber forensic expert, at public expense, will be denied for the reasons explained.